WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| L. D. Meabon,<br><br>    Plaintiff,<br><br>v.<br><br>Nancy A. Berryhill, Acting Commissioner of Social Security Administration,<br><br>    Defendant. | No. CV18-0532-PHX-DGC<br><br>**ORDER** |

Pro se Plaintiff L.D. Meabon seeks review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of Social Security ("the Commissioner"), which denied her disability insurance benefits and supplemental security income under sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act. For the following reasons, the Court will vacate the Commissioner's decision and remand the matter for further administrative proceedings.

**I.    Background.**

Plaintiff is a 43 year-old woman with a high-school education and an Associate of Arts degree in television broadcasting. A.R. 78. Plaintiff previously worked as a human resources manager and personal assistant. A.R. 85-85. Plaintiff applied for disability benefits on January 9, 2014, alleging disability beginning October 31, 2013. A.R. 169. On June 14, 2016, Plaintiff and a vocational expert ("VE") appeared and testified at a hearing before the ALJ. A.R. 52-119. On April 7, 2017, Plaintiff, a VE, and a medical expert

("ME") appeared before the ALJ at a supplemental hearing. A.R. 120-66. On May 23, 2017, the ALJ issued a partially favorable decision, finding Plaintiff disabled within the meaning of the Social Security Act from October 31, 2013 through November 30, 2014. A.R. 26-42. But the ALJ found that Plaintiff's disability ceased as of December 1, 2014, based on medical improvement. A.R. 31. The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review on February 7, 2018. A.R. 1-4.

**II.     Legal Standard.**

The district court reviews only those issues raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, less than a preponderance, and relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* In determining whether substantial evidence supports a decision, the Court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* (internal citations and quotation marks omitted). As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

**III.    The ALJ's Sequential Evaluation Process.**

**A.     Disability Determination.**

To determine whether a claimant is disabled for purposes of the Social Security Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, and the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is engaging in substantial gainful activity. 20 C.F.R.

§ 404.1520(a)(4)(i). If so, the claimant is not disabled, and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. § 404.1520(a)(4)(ii). If not, the claimant is not disabled, and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. pt. 404. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. At step four, the ALJ assesses the claimant's residual functional capacity ("RFC") and determines whether the claimant is capable of performing past relevant work. § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work based on the claimant's RFC, age, education, and work experience. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled.

At step one, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2013, and that she had not engaged in substantial gainful activity since October 31, 2013. A.R. 35. At step two, the ALJ found that Plaintiff had the following severe impairments from October 31, 2013 through November 30, 2014: schizophrenia spectrum and other psychotic disorders. *Id.* At step three, the ALJ determined that Plaintiff did have an impairment or combination of impairments that meets or medically equals a listed impairment, and that Plaintiff's substance use disorder was not a contributing factor material to the determination of her disability. A.R. 36.

**B.     Continuation of Disability.**

The ALJ found that Plaintiff was able to function without a considerable impairment as of December 1, 2014, due to medical improvement. A.R. 38. Once an ALJ finds a claimant disabled, the ALJ follows an eight-step sequential evaluation process to determine whether a claimant's disability continues through the date of the decision. *See* 20 C.F.R. § 404.1594(f)(1)-(8). The ALJ determines whether: (1) the claimant is engaging in

substantial gainful activity, (2) the claimant has an impairment or combination of impairments which meets or medically equals the severity of a listed impairment, (3) medical improvement has occurred, (4) medical improvement is related to ability to work, (5) an exception to medical improvement applies, and whether (6) all the claimant's current combined impairments are severe. Then the ALJ assesses (7) the claimant's RFC based on current impairments and determines whether she can perform past relevant work, and (8) whether the claimant can perform other work that is suitable for her RFC, age, education, and work experience. *Id.*

The ALJ followed this sequential process and found, at step one, that Plaintiff had not engaged in substantial gainful activity since she became disabled on October 31, 2013. A.R. 35. At step two, the ALJ found Plaintiff had the following severe impairments beginning December 1, 2014: schizophrenia spectrum, other psychotic disorders, and a substance addiction disorder. A.R. 36. At step three, the ALJ found medical improvement as of December 1, 2014. A.R. 38. At step four, the ALJ found that the medical improvement was related to Plaintiff's ability to work. *Id.* The ALJ did not address step five given his findings at steps three and four that Plaintiff's medical condition had improved and the improvement was related to ability to work. *See* 20 C.F.R. § 404.1594(f)(5). At step six, the ALJ found that beginning December 1, 2014, Plaintiff had no current, severe combined impairments. A.R. 37. Under steps seven and eight, the ALJ determined that Plaintiff could not perform past relevant work (A.R. 40), but that she could perform a full range of work at all exertional levels that exists in the national economy, with the following non-exertional limitations. Plaintiff is limited to simple, repetitive tasks, but cannot perform such tasks in a fast-paced production environment; she is limited to only occasional interactions with co-workers and supervisors, and only brief, intermittent and superficial public contact; she can concentrate in two hour blocks of time throughout an 8-hour workday, with two 10 to 15 minute breaks, and a 30 to 60 minute lunch period (A.R. 38-40). The ALJ determined that Plaintiff had an RFC to work as a laundry worker, domestic maid, and industrial cleaner or night janitor. A.R. 41.

## IV. Discussion.

Although her arguments are not entirely clear, Plaintiff seems to state three reasons why the ALJ's decision is defective: (1) Plaintiff was diagnosed by her psychiatrist on May 13, 2016 with depersonalization disorder, after the date that the ALJ found medical improvement (Doc. 11 at 3); (2) the ALJ's finding of medical improvement is incorrect because Plaintiff continued to experience delusions after December 1, 2014 (*id.*); and (3) various mental health issues continue to prevent her from working (*id.* at 10).[1]

### A. Medical Improvement.

The Court reads Plaintiff's arguments as challenging the ALJ's interpretation of the medical evidence and disputing that substantial evidence supports the ALJ's decision. Plaintiff specifically challenges the ALJ's crediting of the testimony by the ME, Dr. Kivowitz, finding medical improvement. Doc. 11 at 3; A.R. 1213.

#### 1. Legal Standard.

The Commissioner bears the burden of establishing that a claimant has experienced medical improvement that would allow her to engage in substantial gainful activity. *Murray v. Heckler*, 722 F.2d 499, 500 (9th Cir. 1983). A court may set aside the ALJ's decision only when it is unsupported by substantial evidence or the decision is premised on legal error. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005).

---

[1] Plaintiff generally asserts that she "was discriminated against due to being a medical marijuana patient and [because of her] age and . . . looks." Doc. 11 at 1. But Plaintiff does not elaborate on how that alleged discrimination affected the ALJ's decision. Plaintiff does not appear to challenge the ALJ's finding that she is not significantly limited by her alleged vision and back disorders. *See* Docs. 11, 16; A.R. 37.

Plaintiff also seems to deny that she has substance abuse issues. Doc. 11 at 9. But at the hearing, the parties agreed that Plaintiff had struggled with substance abuse. A.R. 130. And the record shows that Plaintiff uses marijuana. In any event, the ALJ found that Plaintiff's substance abuse was not material to his determination of disability. A.R. 36. Thus, the ALJ's interpretation of the evidence with respect to Plaintiff's substance use was not unfavorable to Plaintiff's ultimate disability determination.

### 2. Dr. Kivowitz.

Dr. Kivowitz, the non-examining ME, testified at the first hearing about Plaintiff's impairments. A.R. 127-35. He found no evidence of symptom exaggeration by Plaintiff and testified to the following diagnoses: poly-substance abuse, psychotic disorder, bipolar disorder, and occasional diagnoses of anxiety disorder, excessive compulsive disorder, and depersonalization disorder. A.R. 128-31. Dr. Kivowitz concluded that Plaintiff had psychotic episodes in 2013 and 2014 and "marginal functional existence" after November 2014. A.R. 132. He found that Plaintiff had improved after November 2014, but he did not cite a cause of improvement. *Id.*; A.R. 134-35. He testified that Plaintiff's hallucinations and other disorders did not end in November 2014, only that she had an improvement in functioning and was able to better manage her disorders. A.R. 134-35. He testified that Plaintiff's impairments would have been severe even if she had not abused substances. A.R. 132.

### 3. ALJ's Opinion.

The ALJ's finding of gradual medical improvement beginning December 1, 2014 was based on the ME's testimony, which he gave great weight. A.R. 36, 38. The ALJ also cited: (1) notes by a licensed clinical social worker, Cynthia Lopercio, who Plaintiff saw in December 2014, indicating that Plaintiff's judgment was seriously impaired and that her ability to function was moderately impaired (A.R. 890-92); (2) Lopercio's notes from January 2015, reporting that Plaintiff planned to resume her personal assistant job, begin dieting and exercising, and join a gym (A.R. 895); (3) Plaintiff's mental health provider's recommended termination of counseling services in May 2015 (A.R. 938); and (4) Plaintiff's reported termination of all prescription medications from November 2015 to May 2016 (A.R. 944). With respect to Plaintiff's diagnosis of depersonalization disorder in May 2016, the ALJ stated:

> In any event, even though the evidence provided on May 13, 2016, does not support a finding of disability, the undersigned observes that even if it did, the record indicates it would represent a new period of which an application for benefits would need to be submitted.

A.R. 40.

### 4. Analysis.

For four reasons, substantial evidence does not support the ALJ's interpretation of the medical evidence and his finding of medical improvement beginning December 1, 2014.

First, the finding relies in large part on the ME's opinion, but the ME offered no explanation of the source or cause of Plaintiff's improvement in December 2014, nor how the improvement allowed her to better manage her conditions. The ME conceded that Plaintiff's disorders did not improve and that her hallucinations did not end, but he nonetheless opined that Plaintiff was able to better manager her conditions. Dr. Kivowitz offered no specifics about how this improvement affected Plaintiff's cognitive, physical, and social wellbeing and functioning capacities. The doctor's unexplained opinion is especially unreliable given the severity of Plaintiff's psychotic episodes in 2013 through November 2014. Plaintiff was hospitalized five times in a three-month span in 2013 and was hospitalized in 2014. A.R. 1237. She suffered from lapses in memory, sometimes for days at a time, and would feel like spirits were jumping in and out of her body. *Id.* During one of her psychotic episodes, Plaintiff was found walking down the street naked, but she did not recall the event. *Id.* She suffered from auditory hallucinations and religious and paranoid delusions, and walked into traffic. A.R. 1003. During another documented episode, Plaintiff lifted her skirt in a courthouse and spread vaginal fluid on the walls, but she did not recall the event. A.R. 1018; 1205-06. The ME's opinion offers no explanation of how an individual with such serious conditions could suddenly better manage them. The ALJ notes compliance with prescribed treatment and medications, but, looking at the same record, the ME did not testify that Plaintiff's alleged improvement was due to successful treatment or medication.

Second, the ALJ's other stated reasons for finding medical improvement are unsupported by the record. The ALJ cites Plaintiff's comments to licensed social worker,

Lopercio, stating that she intends to diet and exercise and may join a gym.[2] But the ALJ does not explain how Plaintiff's statements of intentions are inconsistent with her ongoing disorders and their disabling effects. *See* A.R. 36-37. When viewed in the record as a whole, Plaintiff's comments do not indicate improvement. Lopercio's assessments during this time included the following.

> [Patient] appears nervous and not as expressive this week; however, thought process is less tangential and confused. Mood is anxious, frustrated. . . . [Patient's] presentation becomes agitated/aroused when recalling memories, and speech becomes pressured. . . . [T]here is evidence to suggest PTSD, including persistent anxiety and hyper-arousal when recalling traumatic memories . . . symptoms indicate mania, including . . . grandiosity.

A.R. 1007 (September 19, 2014).

> [Patient] exhibits hyper-religi[os]ity today, insisting that recent break was "inspired by God." [Patient] is resistant to Bipolar diagnosis, and becomes agitated . . . . [She] also exhibits expansive mood, grandiosity and flight of ideas. . . . [S]ymptoms indicate [bipolar]. . . . [Patient's] judgment and functioning is significantly impaired by mood/thought disturbance.

A.R. 1013 (October 10, 2014); A.R. 1016 (October 10, 2014).

> [Patient] is agitated today . . . thoughts and speech are tangential, pressured; flight of ideas and paranoia are continued features. These symptoms appear consistent with the criteria for a hypomanic episode. . . . [Patient's] judgment and insight are impaired by delusions of grandeur and hyperreligi[os]ity. . . . [Patient] is not sleeping well, and exhibits a great deal of anger[.]

A.R. 1025 (November 14, 2014); A.R. 1028 (November 21, 2014).

> [Patient] continues in therapy for treatment of Bipolar DO, which is evidenced today in delusional thought and pressured speech. . . . [J]udgment is seriously impaired, overall function is moderately impaired by paranoid delusions. . . . [Patient] is agitated, mood is expansive; speech is pressured

---

[2] The ALJ's opinion also notes that Plaintiff was "enjoying the d[isp]osable income her personal assistant job provided her" (A.R. 38), but the Court finds no support for this assertion in the ALJ's record citations. In any event, as discussed below, Plaintiff's employment in May 2015 does not constitute substantial evidence supporting a finding of medical improvement in December 2014.

- 8 -

and tangential; and she exhibits paranoia, flight of ideas and delusional thought.

A.R. 1030-31 (December 12, 2014)

[T]herapist notes increased anxiety and manic symptomology in [patient's] presentation. [Patient's] speech is pressured and thoughts are tangential as she shares about Strawman theory and other flight of ideas. . . . [Patient] is strongly manic today. She exhibits pressured, tangential speech, flight of ideas and paranoid delusions. Reports sleep disturbance and anxiety; mood is angry. [Patient] has been without medications for three days, and exhibits both PTSD and Bipolar symptoms.

A.R. 1039-40 (January 9, 2015).

[Patient's] mood is slightly elevated, affect is expansive today. Thoughts are organized but grandiose. Speech is pressured . . . . She is not as strongly paranoid today but still articulates some mistrust of institutions . . . . She is encouraged to continue medications and meditation. She appears healthier than at any time since treatment began.

A.R. 1049 (February 20, 2015).

[Patient] begins to rant about judge's "complicity" and the miscarriage of justice in her case . . . . [Patient's] mood and affect are expansive; thoughts are grandiose, tangential; speech is pressured. . . . [Patient's] mood is labile, affect is agitated . . . . Based on her presentation today, therapist is concerned that [patient] may have stopped taking her prescribed medication.

A.R. 1051-52 (March 12, 2015); A.R. 1058-59 (March 26, 2015).

It is true that some of Lopercio's notes indicate moments of progress by Plaintiff during individual treatment visits. But Lopercio's consistent assessment of Plaintiff does not support medical improvement on December 1, 2014. The ALJ's citation to isolated comments by Plaintiff without considering the record as a whole amounts to "improper cherry-pick[ing]." *Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014); *see also Diedrich v. Berryhill*, 874 F.3d 634, 642 (9th Cir. 2017).

Third, the objective medical evidence contradicts rather than supports the ALJ's interpretation of the record. During the hearing, the ME testified that a score of 50 or below on the test of Global Assessment of Functioning ("GAF") is a "serious" negative score for measuring a patient's progress, and he cited those scores in explaining his conclusion about Plaintiff's diagnoses. A.R. 131-32; *see also Pate-Fires v. Astrue*, 564 F.3d 935, 937 n.1 (8th Cir. 2009) (defining "GAF"). During the months before and after December 1, 2014, Plaintiff consistently scored at or near 50, with no marked improvement beginning in December 2014. Out of the therapist's stated goal of a score of 65, the record reveals the following scores for Plaintiff: 50 in September 2014 (A.R. 1004-07); 50, 50, and 55 in October 2014 (A.R. 1013-19); 55 and 53 in November 2014 (A.R. 1025-28); 50 and 50 in December 2014 (A.R. 1031-34); 59, 48, and 48 in January 2015 (A.R. 1037-43); 55 and 55 in February 2015 (A.R. 1046-49); and 55 and 50 in March 2015 (A.R. 1052-59). Out of 15 scores in 7 months, Plaintiff received 8 scores that were at or below 50, with more than half of those occurring during or after December 2014.

Finally, the ALJ cites Plaintiff's mental health provider's recommendation in May 2015 that she terminate counseling services, the actual termination of counseling in August 2015, Plaintiff's part-time employment in May 2015, and Plaintiff's reported termination of all prescription medications from November 2015 to May 2016. A.R. 37-38. But the ALJ did not find medical improvement in May, August, or November. Although evidence of improvement that occurs after the date of medical improvement might constitute support for such a finding, the evidence cited by the ALJ is five, eight, and eleven months after December 1, 2014.

Viewing the record as a whole, the Court cannot find that the ALJ's improvement date of December 1, 2014, is supported by substantial evidence. As a result, the Court must vacate the ALJ's decision.

**V.      Scope of Remand.**

Plaintiff asks the Court to remand for an award of benefits. Doc. 11 at 10. "When the ALJ denies benefits and the court finds error, the court ordinarily must remand to the

agency for further proceedings before directing an award of benefits." *Leon v. Berryhill,* 880 F.3d 1041, 1045 (9th Cir. 2017). Under a "rare exception" to this rule, the Court may remand for an immediate award of benefits after conducting a three-part inquiry:

> The three-part analysis . . . is known as the "credit-as-true" rule. First, we ask whether the ALJ failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion. Next, we determine whether there are outstanding issues that must be resolved before a disability determination can be made, and whether further administrative proceedings would be useful. When these first two conditions are satisfied, we then credit the discredited testimony as true for the purpose of determining whether, on the record taken as a whole, there is no doubt as to disability.

*Id.* (internal quotation marks and citations omitted). *Leon* emphasized that the Court has discretion to remand for further proceedings even if it reaches the third step in the process. *Id.* "Where an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency." *Id.* (quotation marks omitted).

At step one, the Court concludes that the ALJ failed to provide sufficient reasons for finding that Plaintiff's disability ended on December 1, 2014, due to medical improvement. Applying step two, the Court concludes that outstanding issues exist regarding the proper interpretation of the medical evidence, the weighing of the ME's opinion, and when, if ever, Plaintiff's disability ended due to medical improvement. Based on the record, the Court cannot conclude that Plaintiff's disability continues through the present, and further proceedings would therefore be useful. The Court will remand for such proceedings.[3]

**IT IS ORDERED** that the final decision of the Commissioner of Social Security is **vacated**, and this case is **remanded** for further proceedings consistent with this opinion.

---

[3] Plaintiff also argues that the ALJ's decision is incorrect because she was diagnosed with depersonalization disorder on May 13, 2016, after the alleged date of medical improvement on December 1, 2014. The Court notes that the ALJ will need to consider the whole record after November 2014 to determine whether and when Plaintiff's disability ended. But the Court disagrees with Plaintiff's contention that her single diagnosis in May 2016 is insufficient to establish disability from November 2014 to the present.

- 11 -

The Clerk shall enter judgment accordingly and **terminate** this case.

Dated this 17th day of December, 2018.

David G. Campbell
Senior United States District Judge